

# The Attorney General of Texas

August 30, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 25-8
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

01 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Charles D. Travis
Executive Director
Texas Parks and Wildlife Department
4200 Smith School Road
Austin, Texas    78744

Opinion No. JM-196

Re:  Construction of section 66.216 of the Parks and Wildlife Code prohibiting possession of a fish having the head or tail removed

Dear Mr. Travis:

You have requested an interpretation of section 66.216(a) of the Texas Parks and Wildlife Code:

> §66.216.  Possession of Headed or Tailed Fish
>
> (a)  No person may possess a finfish of any species taken from coastal water, except broadbill swordfish, shark, and king mackerel, that has the head or tail removed unless the fish has been finally processed and delivered to the final destination or to a certified wholesale or retail dealer.

Your question has reference to a recreational fishing club which has set up a camp on one of the spoil islands located along the land cut between Baffin Bay and the lower Laguna Madre Bay System.  This spoil island is one of a group of such islands which were created by dredging operations for the channel that bisects the waterway between the mainland and the barrier islands to the east.  The fishing club has received a permit from the General Land Office under which it leases a state-owned cabin on the spoil island.  The lease specifies that the cabin is to be used for recreational purposes only.  This cabin serves as a residence during the club's fishing expeditions to the land cut.  The club fillets fresh fish in the kitchen of its spoil island cabin.  In addition, the cabin has facilities for refrigerating and storing the filleted fish before it is transported back to the mainland.  You ask whether section 66.216(a) prohibits the club's possession of filleted fish at its spoil island camp.  We conclude that it does.

Section 66.216(a) was enacted via House Bill No. 1000, chapter 153, at 347.  Acts 1981, 67th Leg., ch. 153, §6, at 376.  This

legislation was intended strictly to enforce the bag and possession limits on redfish and spotted sea trout.  See generally Solis v. Miles, 524 F.Supp. 1069 (S.D. Tex. 1981).  Because, outside of the laboratory, it is difficult to identify a fish once its head or tail has been removed, inspectors must be able to view the fish before it has been filleted.  Effective policing of fishermen is, therefore, crucial to the proper enforcement of these possession limits.

Section 66.216(a) allows fishermen to possess filleted fish only if either of the following is true:  (1) the filleted fish have been delivered to a final destination, or (2) the filleted fish are delivered to a certified (licensed) wholesale or retail fish dealer. It is our opinion that neither of these is true in the case of the spoil island fishing club.

We first conclude that a spoil island is not a final destination. Our research has not found any court opinions nor any attorney general opinions which construe the term "final destination" as it appears in section 66.216(a).  As allowed by the Code Construction Act, we base our interpretation of this term on the Parks and Wildlife Department's own construction.  V.T.C.S. art. 5429b-2, §3.03(6).  The Parks and Wildlife Commission has adopted the following definition of a final destination as that term is used in section 66.216:

> a place either on the mainland, a peninsula, or a
> barrier island where a fisherman finally lands his
> catch and does not further transport his fish by
> boat.  Final destination does not include jetties
> or piers.

7 Tex. Reg. 952 (1982) (to be codified in 31 T.A.C. §57.391).

Along with the publication of the final destination definition in the Texas Register, the Parks and Wildlife Department explained that the definition was intended to allow

> the coastal fisherman a method of preservation to
> protect his catch from spoilage while transporting
> the fish to his permanent residence.

[7] Tex. Reg. 952 (1982).  The definition achieves this goal in the following way.  To prevent spoilage, it is crucial that a fisherman properly refrigerate the fish he has caught.  In general, fishermen store their fish in portable ice chests.  They then transport their fish in these portable ice chests back to their permanent residences. Because these ice chests are relatively small and because they are usually quite heavy, efficient use of the space within the ice chests is essential.  The "final destination" definition was enacted to allow a fisherman to remove the heads and tails from the fish as soon as the boat reaches land.  Because the filleted fish, with heads and tails

removed, will take up much less space in the ice chests, a fisherman can preserve more of his catch, and fewer fish will be wasted. The "final destination" exception to the article 66.216(a) prohibition against the possession of headless or tailless fish distinguishes the "final destination" -- the place at which a fisherman finally lands the fish -- from the "ultimate destination" -- the place to which a fisherman ultimately transports the fish. The definition allows a fisherman to fillet his catch at the final destination before transporting them to the ultimate destination.

In addition to helping fishermen to preserve the fish that they catch, the final destination definition also helps in the general enforcement of article 66.216(a). The final destination at which the fisherman finally lands his catch, whether at the mainland, a peninsula or a barrier island, will be subject to periodic inspection by the Parks and Wildlife Department. The definition specifically includes only points from which a fisherman must no longer "transport his fish by boat." The Parks and Wildlife Department informs us that this language was intended to totally prohibit fishermen from possessing filleted fish on a boat.

Fishing boats pose great enforcement problems for inspectors. If an inspector were to stop a fishing boat and discover filleted fish, it would be difficult for him to determine either that the filleted fish were redfish or that the fisherman had exceeded his daily catch limit. A fisherman could easily deny that the fish were redfish, a position difficult to refute outside the laboratory, or he could assert that he had accumulated the fish over several days, never having exceeded the limit on any one day. These potential problems are avoided by the final destination definition.

We note that the usual way to remove fish from a spoil island is by boat. Because the final destination definition specifically prohibits the possession of filleted fish at any place from which they will be further transported by boat, we conclude that a spoil island cannot be a final destination. Further, we believe that allowing the possession of filleted fish on a spoil island would be inconsistent with the intent behind the final destination definition. Because spoil islands are surrounded by water and, thus, difficult to police effectively, the enforcement problems with respect to spoil islands will be similar to those with respect to boats. It is, therefore, our opinion that the legislature intended that a spoil island should be treated no differently from a boat with respect to article 66.216(a). Neither a boat nor a spoil island can be a final destination.

Section 66.216(a) also excepts from its strict prohibition on the possession of filleted fish any person who is either a certified wholesale or retail fish dealer. You ask whether the club would be protected from the force of section 66.216(a) if it were to obtain a retail fish dealer's license. We conclude that it would not.

Section 47.001 defines a retail fish dealer:

> (4) 'Retail fish dealer' means a person engaged in the business of buying for the purpose of sale to a consumer fresh or frozen edible aquatic products.

As we have pointed out earlier, the club's permit to use the spoil island specifies that the island camp shall be used for recreational purposes only. Therefore, the club may not obtain a retail dealer's license for its camp on the spoil island itself. However, you are concerned about the following situation. The club about which you inquire maintains a facility in Corpus Christi, and the club has received a retail fish dealer's license in that city. Because it is the club itself and not the location which is licensed, the club argues that its retail license protects its members while on the spoil island.

The club bases its argument on the language of section 47.001 of the Parks and Wildlife Code which defines place of business:

> (9) 'Place of business' means the place where orders for aquatic products are received or where aquatic products are sold, including a vehicle if aquatic products are sold from the vehicle, but does not include a public cold-storage vault, temporary receiving station, or vehicle from which no orders are taken or no shipments or deliveries are made other than to the place of business of a licensee in this state. (Emphasis added).

The club contends that the spoil island site is analogous to a "receiving station" and thus is not a "place of business," and, therefore, the club's Corpus Christi retail fish dealer's license will allow club members to possess filleted fish at their spoil island camp. We disagree.

This office discussed these temporary receiving stations in Attorney General Opinion O-1596 (1939). The opinion concluded that these temporary receiving stations must all be considered places of business and thus separately licensed. However, in 1973, section 47.001 of the Parks and Wildlife Code was amended to exempt receiving stations from the license requirements. Acts 1973, 63rd Leg., ch. 125, at 263. Dealers now pay one license fee which covers the central place of business and all outside receiving stations. The club believes that because only the central place of business needs to be licensed and the receiving station is covered by that license, the club's Corpus Christi license should protect the club members from violations of article 66.216(a) while they are on the spoil island. It is our opinion, however, that the instant case of a recreational

fishing club's attempt to circumvent a statute must be distinguished from a wholesale or retail business's interest in avoiding the payment of multiple license fees. We note that the receiving stations referred to in Attorney General Opinion O-1596 (1939) were all on the mainland. We assume that the wholesale and retail dealer exception in section 66.216(a) was directed at these mainland receiving stations which were also the subject of the amendment to the "place of business" definition in section 47.001.

Viewing receiving stations as mainland facilities of an established business for profit, we conclude that the legislature intended that receiving stations could be exempted from section 66.216(a) because they would be subject to periodic inspections. Although the legislature has declared that these receiving stations are not "places of business," they do sometimes temporarily house filleted fish. We assume that the retail and wholesale dealer exception was meant to protect them. In our opinion, the disjunct "final destination or . . . wholesale or retail dealer" applies to the temporary receiving stations which are not "ultimate" destinations, in the sense that the filleted fish are later transported somewhere else, but which are subject to some control <u>via</u> their association with an established commercial fish business.

No such guarantees are present in the case of the recreational club about which you inquire. It is our opinion that the wholesale and retail dealer exception to the prohibition in section 66.216(a) applies only to the mainland receiving stations of established businesses because these receiving stations, unlike spoil islands, are subject to periodic inspection by fish and game wardens.

Moreover, it does not appear to us that the club qualifies as a retail fish dealer within the statute definition of that term. Texas Parks and Wildlife Code, section 47.001(4) defines a "retail fish dealer" as

> a person engaged in the business of buying for the purpose of sale to a consumer fresh or frozen edible aquatic products.

The facts as given to us indicate that the club catches fish for its own consumption, that it is not engaged in a commercial business, and that it does not buy fish for the purpose of sale. However, we need not pass judgment on the propriety of this recreational club's obtaining a retail fish dealer's license in the city of Corpus Christi because we conclude that its having this license will not serve to allow the club to possess headless or tailless finfish at its spoil island club.

## S U M M A R Y

Article 66.216(a) of the Parks and Wildlife Code prohibits the possession of filleted fish on a spoil island.

Very truly yours,

JIM   MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
David Brooks
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton